**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Irene Constance Munoz,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-18-00063-TUC-BPV<br><br>**ORDER** |

Plaintiff Irene Munoz filed the instant action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) seeking review of the final decision of the Commissioner of Social Security. The Magistrate Judge has jurisdiction over this matter pursuant to the parties' consent under 28 U.S.C. § 636(c). (Doc. 16.) The matter is now fully briefed. (Docs. 18-20.) For the following reasons, the Court affirms the decision of the Commissioner.

I. **PROCEDURAL HISTORY**

On November 11, 2014, Plaintiff filed a protective application for disability and disability insurance benefits (Administrative Record ("AR") 171). Plaintiff alleged disability as of January 6, 2010 due to post-traumatic stress disorder (PTSD), depression, anxiety, aortic valve insufficiency, asthma, high blood pressure, and obesity. (AR 16.) Plaintiff's application was initially denied on May 3, 2015 (AR 76-89), and upon reconsideration on June 19, 2015 (AR 91-111).

After requesting a hearing, on March 8, 2017 Plaintiff testified before an Administrative Law Judge ("ALJ") (AR 16). At the hearing, Plaintiff adjusted the alleged

onset date to July 15, 2011 (AR 51), and the ALJ admitted into the administrative record additional, but untimely, medical evidence (AR 16). Nonetheless, the ALJ issued an unfavorable decision on May 17, 2017. (AR 16-33.) The Appeals Counsel denied Plaintiff's Request for Review on December 18, 2017 (AR 1-4), making the ALJ's decision the Commissioner's final decision for the purposes of review.

Plaintiff filed the instant action on February 8, 2018. Plaintiff first claims that the ALJ legally erred because she did not consider Plaintiff's mental impairments severe at Step Two, and this error was not harmless because the subsequent Residual Functional Capacity ("RFC") did not account for the limiting effects of Plaintiff's mental impairments. (Doc. 19 at 12.) Plaintiff also argues that the ALJ did not properly analyze the opinions of consultative physician Dr. Noelle Rohen, Ph.D and treating Nurse Practitioner Jennifer Pierce. *Id*. at 21-25.

**II.    STANDARD OF REVIEW**

The Court has the "power to enter, upon the pleadings and the transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The factual findings of the Commissioner shall be conclusive so long as the findings are based upon substantial evidence and there is no legal error. 42 U.S.C.§§ 405(g), 1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is "more than a mere scintilla[,] but not necessarily a preponderance." *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)). Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). Moreover, the Commissioner, not the Court, is charged with the duty to weigh the evidence, resolve material conflicts in the evidence, and determine the case accordingly. *Matney*, 981 F.2d at 1019. However, the Commissioner's

decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence. . . . Rather, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." *Tackett*, 180 F.3d at 1098 (citation and quotation marks omitted).

If the district court determines that the ALJ committed legal error, it must then consider whether the error was harmless. *Treichler v. Comm'r Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Harmless error occurs "when it is clear from the record the ALJ's error was inconsequential to the ultimate nondisability determination." *Garcia v. Comm'r Soc. Sec.*, 768 F.3d 925, 932 (9th Cir. 2014) (citation and quotation marks omitted).

### III. SUMMARY OF ALJ'S FINDINGS

The burden of demonstrating disability lies with a claimant. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). To do so, a claimant must show that a physical or mental impairment precludes substantial gainful activity, and it is anticipated that this impairment will either result in death or last continuously for at least a year. 42 U.S.C. § 423(d)(1).

An ALJ determines whether a claimant is disabled through a five-step sequential evaluation. *See* 20 C.F.R. §§ 404.1520, 416.920. A claimant must establish: (1) she has not performed substantial gainful activity since the alleged disability onset date ("Step One"); (2) she has a severe impairment(s) ("Step Two"); and (3) her impairment(s) meets or equals the listed impairment(s) ("Step Three"). *Id*. "If the claimant satisfies these three steps, then the claimant is disabled and entitled to benefits. If the claimant has a severe impairment that does not meet or equal the severity of one of the ailments listed[,] . . . the ALJ then proceeds to Step Four, which requires the ALJ to determine the claimant's [RFC]." *Dominguez v. Colvin*, 808 F.3d 403, 405 (9th Cir. 2015). "After developing the RFC, the ALJ must determine whether the claimant can perform past relevant work." *Id*. Then, at Step Five, "the government has the burden of showing that the claimant could perform other work existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience." *Id.*; 20 C.F.R. §§ 404.1520, 416.920.

In this case, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from July 5, 2011 until her last insured date of December 16, 2016. (AR 19.)

At Step Two, the ALJ determined that Plaintiff had severe physical impairments, including: disease of the aortic valve; obesity; muscle, ligament, and facial disorder; and asthma. *Id*. However, the ALJ found that Plaintiff's mental impairments were not severe. *Id*.

Then, the ALJ decided at Step Three that the Plaintiff's impairments did not meet or equal the listed impairments–either singularly or in combination. (AR 26.)

At Step Four, the ALJ stated that given the limiting effects of her ailments, Plaintiff's RFC allowed work with a medium exertional level and some physical limitations. (AR 26-27.) Based on this assessment, the ALJ concluded that Plaintiff could perform past relevant work in food service or as a day care worker. (AR 32.)

The ALJ never reached Step Five. Rather, the ALJ determined Plaintiff was not disabled at Step Four, and stated that in "comparing the claimant's [RFC] with the physical and mental demands of this work, I find that the claimant was able to perform [past relevant work] as generally performed [in the national economy]." *Id*.

## IV. PLAINTIFF'S BACKGROUND AND STATEMENTS ON THE RECORD

Plaintiff was a 58-years old woman (AR 27) with a ninth-grade education (AR 51) on the date of the Administrative Hearing. She stood 4'11" and weighed 196 pounds. (AR 51.) Plaintiff completed the ninth grade (AR 51), and previously worked as a day care worker and food service provider (AR 32).

Plaintiff testified at the Administrative Hearing that she suffered from depression, confusion, anxiety, panic attacks, and paranoia which prevented her from engaging in work. (AR 51-58.) She also alleged various physical limitations, which are not the subject of this appeal.[1] She was currently being treated for her mental symptoms with venlafaxine and hydroxyzine. (AR 62, 339.) As a result of her mental impairments, Plaintiff stated she

---

[1] Plaintiff raises no argument about the ALJ's determination about her physical impairments or credibility.

had difficulty concentrating and had developed phobias that often prevented her from leaving the house. (AR 53.)

Plaintiff's concentration difficulties allegedly manifested in the following ways. Plaintiff claimed she could concentrate for about 15-20 minutes, but then would have to retrace her steps and remind herself what she was doing. (AR 52-53.) In addition, Plaintiff needed to keep a calendar and write reminders on sticky pads to try to recall daily events and deadlines. (AR 54.) She was forgetful at home; leaving the stove on (AR 60) or putting things away in unusual places (AR 54). Furthermore, she had stopped driving for the most part, because she felt her forgetfulness made her a danger behind the wheel. (AR 54.) To deal with her concentration issues, her family often helped her remember appointments and drove her around. *Id*. Plaintiff also received assistance from her advocate, who helped keep track of appointments *Id*. Finally, interpersonally she felt her lack of concentration prevented her from carrying on conversations with others. (AR 52, 556-56.)

Plaintiff testified that her depression and paranoia were variable, she experienced "more bad days than good," and the bad ones occurred around five to six days a month. (AR 57-58.) During bad spells, she would isolate herself in her room and remain in her pajamas. (AR 57.) Plaintiff's grandchildren were not permitted to bother her during these depressive episodes because she had no desire to be around others. *Id*. When in a paranoid state, Plaintiff explained that she missed family events and could not take her dog for a walk. (AR 59.)

Plaintiff claimed her mental impairments also manifested in physical dysfunction. After her daughter died from substance abuse in 2009 (AR 59), Plaintiff alleged she went into a deep depression which caused her to gain approximately one hundred pounds (AR 51). Even back when Plaintiff was working, her phobias would cause her to feel like passing out. (AR 51.) Often after intense therapy sessions, Plaintiff stated she suffered from explosive diarrhea that her psychiatrist believed was triggered by emotional trauma. (AR 56.) In addition, Plaintiff told the ALJ that suffered so much fear and paranoia about the upcoming Administrative Hearing that she broke out in hives. (AR 55.)

- 5 -

## V. VOCATIONAL EXPERT STATEMENTS

At the Administrative Hearing, the ALJ presented several hypotheticals to the Vocational Expert. The first two included no mental limitations; the third limited work to simple, routine, repetitive tasks; and the fourth limited work to simple, routine repetitive tasks with occasional contact with the public and coworkers. (AR 68-70.) The VE indicated that a hypothetical person in the first two categories would be able to perform Plaintiff's former work of food service supervisor and day care as generally performed. (AR 68-69.) In contrast, the individual limited to routine tasks could not perform Plaintiff's past work but could still work as a marker, hand packager, or garment sorter. (AR 70.) The same work was still available for a person with the additional limitation of only occasional contact with others, but the percentage of jobs would erode by fifty percent. *Id*. Regardless, the VE noted that a person was unemployable if he or she was off task fifteen percent of the time or absent from work two or more days a month. (AR 70-71.)

## VI. ALJ'S SEVERITY DETERMINATION

When evaluating the degree to which Plaintiff's symptoms limit her ability to work, the ALJ first considers (a) whether there is an impairment that would reasonably be expected to cause the claimant's symptoms, and (b) the severity of claimant's ailments, including intensity, persistence, and limiting effects of the alleged symptoms. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling ("SSR") 16-3p (Mar. 28, 2016). At Step Two, for mental impairments an ALJ evaluates the degree of impairment in four areas: understanding, remembering, or applying information; interacting socially; concentrating, persisting, and maintaining pace; and self-adapting and managing. 20 C.F.R. § 404.1520a(c)(3) (2017). Degrees of impairment include: none, mild, moderate, marked, and extreme. *Id*. Then, based on the degree of a claimant's limitation, the ALJ determines the severity of the mental impairment. 20 C.F.R. §§ 404.1520a(d); 416.920(a)(4)(ii).

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims. . . . An impairment or combination of impairments can be found not severe only if

the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citation and quotation marks omitted) (citing SSR 85–28. Despite the de minimis screening measure, in general a finding of "none" to "mild" impairment will preclude a determination that an impairment is severe, unless the record demonstrates "more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1) (citing 28 C.F.R. § 404.1522). "Work activities" signify the ability to: see, hear, and speak; comprehend, perform, and remember easy instructions; use judgment; respond appropriately; and handle changes in work routine. 20 C.F.R. §404.1522. A finding that an impairment or combination of impairments is not severe at Step Two must be supported by "clearly established medical evidence." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85-28); *see also Orr v. Astrue*, 2008 WL 344528 (D. Ariz. Feb. 7, 2008) (if not clearly established through medical evidence, an ALJ must carry out the five-step evaluation). Specifically, concentration difficulties do not severely limit the ability to perform work activities unless there are abnormalities noted "by medically acceptable clinical diagnostic techniques that can be observed *apart from an individual's [alleged] symptoms*." SSR 16-3p (emphasis added).

Plaintiff's claim alleges harmful legal error occurred during the ALJ's Step Two severity determination. (Doc. 19 at 12.) This error caused a windfall, resulting in harmful error in the RFC because the RFC did not include Plaintiff's mental limitations. *Id*.

The ALJ evaluated Plaintiff's mental symptoms as a whole, rather than under any individual listing. Her severity analysis stated the following:

> Other complaints and diagnoses appear in the treatment records periodically, including . . . mental conditions. There is no objective medical evidence to show these impairments are more than transient or they cause significant vocational limitations.
>
> As a threshold matter, I am cognizant of the substantial overlap in symptomology between different mental impairments, as well as the inherently subjective nature of mental diagnoses. Accordingly, the claimant's psychological symptoms and their effect on her functioning have been considered together, instead of separately, regardless of the diagnostic

label attached.

(AR 19.)

After finding Plaintiff's mental impairments were minimal, the ALJ analyzed Plaintiff's degree of impairments according to the four areas of impairment necessary under 20 C.F.R. § 404.1520a(c)(3). First, the ALJ determined that Plaintiff had no limitations in understanding, remembering, or applying information. (AR 25.) In support, the ALJ explained that Plaintiff was the primary caregiver for three grandchildren; she ensured that the grandchildren were fed well, supervised, safe, and completed schoolwork. *Id*. She taught them how to survive, limited computer usage, and oversaw medications. *Id*. Further, she utilized a calendar and created lists to keep track of her day. *Id*. Moreover, consultative examiner Dr. Noelle Rohen also found Plaintiff's understanding and memory were grossly intact. *Id*. (citing AR 889). Plaintiff's ability to raise grandchildren full time, her organizational skills, and her intact understanding and memory suggested Plaintiff was capable of working. *Id*.

Second, the ALJ found only mild limitations in Plaintiff's social functioning. *Id*. The ALJ determined Plaintiff's claim that she isolated herself from others contradicted her admitted activities such as regular movies, meals, and overnights with friends; constant company when leaving the home; as well as by the medical records which demonstrated appropriate grooming and hygiene. *Id*.

Third, the ALJ concluded that the limitations on Plaintiff's concentration, persistence, and pace (CPP) were merely mild, despite her claims to the contrary. *Id*. The ALJ stated there was little concrete evidence of CPP limitations, and a lot of evidence that Plaintiff's attention span was unimpaired. *Id*. (citing AR 1091, 1096, 1105, 1111, 1161). Also, even when there were mild indications of attention difficulties, she was still able to follow and participate in conversation *Id*. (citing AR 889). In addition, the ALJ observed that although Plaintiff claimed her attention difficulties began after the death of her daughter in 2009, she had not reported any memory problems until 2015. *Id*. (citing AR 641). This discrepancy suggested her CPP impairments were not as significant as Plaintiff

alleged.

Finally, the ALJ stated the evidence supported only mild limitations in Plaintiff's ability to adapt or manage herself. *Id*. Plaintiff was actively participating in treatment for her alleged anxiety and depression. *Id*. Also, Plaintiff's activities of daily living (cleaning, caring for grandchildren and husband, going to social and family events) showed little limitation, notwithstanding one documented instance where she was oblivious to burning food. *Id*. Finally, even the consultative examiner found that Plaintiff could learn new skills, which supported Plaintiff's ability to adapt. *Id*.

In addition to the four areas of evaluation, the ALJ's severity section discussed other reasons why she found Plaintiff's symptoms of anxiety, depression, and PTSD posed no more than minimal limitations on her ability to engage in work and undermined her alleged symptoms. The ALJ suggested that because Plaintiff had adopted and cared for her grandchildren–two of whom were adopted before her daughter's death–that this diminished her allegations of mental impairment. (AR 21.) The ALJ mentioned that Plaintiff's childcare duties were so significant that she received subsidies for them. (AR 23.) The ALJ pointed to several activities which suggested Plaintiff was quite involved with her grandchildren's lives, and suggested that Plaintiff's attempts to find full time child care was evidence that her involvement in her grandchildren's lives was substantial. *Id*. She was so involved, in fact, that in 2015 Plaintiff went to lunch and a movie just to get away from the stressors of caring for three children. *Id*. In addition to familial activities, the ALJ noted that Plaintiff went to dinners and movies with friends, walked in Sabino Canyon, and entertained her husband's family for Thanksgiving. *Id*.

However, the ALJ did acknowledge that Plaintiff received counseling and medication from three different providers for mental health needs, and her medications had to be adjusted frequently. (AR 21.) She also conceded that Plaintiff's provider felt her depression may have been undertreated in the past. (AR 22.) The ALJ admitted that Plaintiff was approved for serious mental illness (SMI) services through Marana Health Center in late 2014 (AR 21), and received a PTSD diagnoses and attended PTSD group

counseling (AR 22). But, the ALJ explained, despite any difficulties, these did not limit her ability to work.

The Court finds that the ALJ's determination that Plaintiff's mental impairments were not severe was substantially supported by the record. The ALJ referred to several instances in the administrative record showing that Plaintiff's mental impairments did not limit her ability to engage in work activities. The ALJ acknowledged that Plaintiff had been on various medications for depression, received a diagnosis for PTSD, and obtained services in the past. The ALJ also conceded that this could reasonably be expected to cause Plaintiff's symptoms. But, the ALJ concluded that Plaintiff's impairment was largely based on her subjective disclosure and there was little medical evidence in support. The ALJ cited to instances in the medical record that showed Plaintiff's mental impairments had a minimal impact on her ability to work. For instance, she was able to act as primary caregiver for her grandchildren, and as many moms will attest, that alone is a full-time job. In addition, she regularly interacted socially, was cooperative, and maintained proper hygiene. Furthermore, she was able to handle increased stressors through therapy, assistance from others, and self-reflection. Moreover, medical opinions revealed she was able to follow and participate in conversations; her understanding and memory were grossly intact; and she could handle her own benefits, learn new skills, and respond appropriately. The ALJ showed that Plaintiff could understand and remember easy instructions because she utilized reminder systems and oversaw her grandchildren's medication schedules and homework. Finally, Plaintiff's concentration difficulties were almost solely subjective, and the ALJ cited many instances wherein medical experts noted her ability to concentrate, use good judgment, and carry on conversations. In short, the ALJ did not err in finding Plaintiff's impairments were not severe. Finally, as explained below, the validity of the ALJ's decision is not affected by her evaluation of Plaintiff's medical examiners.

///

///

## VII. ALJ'S ANALYSIS OF JENNIFER PIERCE'S OPINION

In addition to the aforementioned analysis, at Step Two the ALJ evaluated the opinion of treating practitioner Jennifer Pierce, DNP, PMHNP-BC. (AR 23, 1234-37.) Plaintiff visited Ms. Pierce for psychiatric medication management every 2-3 months. (AR 1235.) Ms. Pierce's 2016 medical impairments questionnaire stated that Plaintiff was likely to suffer from a lifetime of recurrent symptoms. *Id*. In addition, Pierce found Plaintiff was unable to travel to unfamiliar places or use public transportation. *Id*. Furthermore, Ms. Pierce believed Plaintiff would be unable to complete a workday without interruptions from her psychological symptoms, would be absent from work more than twice a month, and would be unable to deal with normal work stress. *Id*. In sum, under the VE's analysis, Ms. Pierce's evaluation of Plaintiff's alleged ailments would preclude Plaintiff from all work.

Nonetheless, the ALJ gave limited weight to Pierce's opinion, stating it conflicted with a separate note by Ms. Pierce. (AR 23.) In an appointment note from November 1, 2016, Ms. Pierce observed that Plaintiff was alert and exhibited a small improvement in her level of anxiety and some improvement in depression. (AR 23; 1161-62.) Plaintiff also demonstrated good judgment, normal attention, and appropriate grooming. (AR 23; 1161-62.)

First, Plaintiff argues that the ALJ's assessment of Ms. Pierce opinion did not consider her evaluations as a whole, and finding Ms. Pierce's determinations to be inconsistent with her overall findings constituted a substitution of the ALJ's medical opinion. (Doc. 19 at 24.) Second, the ALJ should not have used treatment records as support of Plaintiff's ability to function, because Plaintiff was not being subjected to additional stressors of employment when she was treated. *Id*.

"[I]n evaluating a claimant's subjective complaints . . . , the adjudicator must give full consideration to all of the available evidence, medical *and other*, that reflects on the impairment and any attendant limitations of function." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (alterations and emphasis in original). Nurse practitioners are

considered other sources. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). An other source cannot determine whether impairment exists; but may outline the severity of Plaintiff's symptoms and the effect of such symptoms on functioning. SSR 06–03p. "[Other sources] are not entitled to the same deference [as acceptable medical sources] . . . . The ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner*, 613 F.3d 1224); *see* 20 C.F.R. § 404.1527. An ALJ provides not merely germane, but clear and convincing reasons for rejecting a treating or examining physician's opinion if such opinion is "conclusory, brief, and unsupported by the record as a whole[] or by objective medical findings," *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004), or if there are significant discrepancies between the physician's opinion and her clinical records, *see Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Contrary to Plaintiff's contention, the ALJ was permitted to give Ms. Pierce's opinion less weight because it conflicted with her clinical records. *See Bayliss*, 427 F.3d at 1216. Although the ALJ discussed only one other evaluation, the ALJ was correct that overall Ms. Pierce (and the Pathways service practitioner before her) found that Plaintiff maintained proper hygiene; was cooperative and articulate; was generally in a good mood; demonstrated fair judgment and insight; had grossly intact memory; and exhibited normal intellectual functioning. (*See* AR 1091, 1095, 1099, 1102, 1105, 1108, 1141, 1161.) Even in the midst of suffering from irritability and impaired attention, her memory was still grossly intact, her insight and judgment were fair, she spoke articulately, and acted cooperatively. (AR 1164.) This was not a substitution of the ALJ's medical opinion; the ALJ merely recognized that as a whole, Ms. Pierce's observations differed from her conclusions.

But, this was not the only reason the ALJ minimized Ms. Pierce's opinion. Plaintiff's ability to go out to eat, see movies, visit with friends, and entertain extended family undermined Ms. Pierce's conclusion that Plaintiff could not travel to new places. It was reasonable for the ALJ to conclude that Ms. Pierce's assertions were not supported by

her overall observations of Plaintiff and Plaintiff's own concessions. The ALJ provided germane reasons for discounting the opinion supported by substantial evidence, and therefore no legal error occurred.

### VIII. ALJ'S ANALYSIS OF DR. NOELLE ROHEN, PH.D.'S OPINION

At Step Two, the ALJ also considered a consultative psychological examination by Dr. Noelle Rohen, Ph.D. (AR 23; 885-88.) The psychological report was based on Dr. Rohen's clinical interview, a Mini Mental Status Examination (MMSE), and medical records, but stated "[u]nless specifically noted, the following narrative represents claimant's self-report." (AR 885.) Plaintiff reported to Dr. Noelle that she suffered from long term depression and anxiety, which was exacerbated after her daughter's death. (AR 886.) She said she suffered paralyzing anxiety at work because she worked at the hospital where her daughter passed away, but ultimately, she left this job because of a shoulder injury. *Id*. Plaintiff also told Dr. Rohen she was agitated and paranoid around people who were not family or close friends. (AR 886, 889.) Finally, she asserted that she had difficulty concentrating; for instance, she misplaced her grandchildren's birth certificates, left items on the stove to burn, and wrote appointments incorrectly in her calendar. (AR 886; 1167.)

Dr. Rohen independently observed that Plaintiff exhibited adequate hygiene, maintained good eye contact, and acted pleasant and cooperative. (AR 887.) Her thinking was coherent and memory adequate. *Id*. Dr. Rohen concluded that Plaintiff was capable of learning new, simple tasks and handling benefit payments in her own interest. (AR 889-90.)

Based on her observations, Dr. Rohen concluded that Plaintff's score on the Mini Mental Status Examination (23/30) could indicate cognitive problems but alternately could have been due to poor focus or subpar effort on the exam. (AR 887.) Dr. Rohen speculated that the lack of effort could have been intentional or perhaps was caused by Plaintiff's "depressive amotivation in general." (AR 888.) Dr. Rohen expected chronic psychiatric issues, and noted that Plaintiff was dealing with trauma and grief that *may* affect her ability to work. *Id*. Furthermore, Dr. Rohen suggested plaintiff *may* be vulnerable. (AR 889.)

Despite the observations, Dr. Rohen found Plaintiff was still able to handle benefits in her own behalf, could learn new simple tasks. (AR 888.)

The ALJ gave partial weight to Dr. Rohen's opinion. (AR 24.) The ALJ noted that the opinion relied heavily on Plaintiff's subjective statements, which were inconsistent with Plaintiff's reported daily activities in other parts of the record (i.e. caring for grandchildren; attending school events; cleaning the home; reading; washing and sorting clothes and dishes; eating and watching movies with friends; and walking in Sabino Canyon). *Id*. Furthermore, the ALJ stated that the evaluation was simply a snapshot of functioning at that moment, not a long-term assessment. *Id*. Moreover, there was no objective evidence supporting her alleged memory loss. *Id*. Finally, the ALJ pointed out that Dr. Rohen's opinion did not preclude Plaintiff from work, it merely suggested she may have subpar persistence, be vulnerable, and be happier in employment that was less demanding and more static. (AR 23-24; 889.)

An ALJ may reject a physician's opinion that has been contradicted by another opinion by "providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Lester*, 81 F.3d at 830). An ALJ provides sufficient reasoning for rejecting a physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings. . . . The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Orn*, 495 F.3d at 632 (internal citation omitted).

Plaintiff argues that Dr. Rohen was called as a consultative examiner either to resolve inconsistencies in the record or because the record as it was did not support a determination. (Doc. 19 at 21.) Plaintiff claims the ALJ should have gathered more information from Dr. Rohen or the other contradicting examiners, rather than simply asserting that the opinion was inconsistent and a snapshot of Plaintiff's functioning. *Id.* at 21, 23-24.) Furthermore, the ALJ's basis for undermining Dr. Rohen's opinion because it was a snapshot was irrational and insufficient. *Id.* at 21-22. Finally, the ALJ was not

permitted to rely on the fact that Dr. Rohen's opinion was highly dependent on Plaintiff's subjective complaints. *Id*. at 22.

While Plaintiff claims that the ALJ needed to recall Dr. Rohen for clarification, it is Plaintiff's burden to show disability, and the ALJ need only request a reexamination when the report was ambiguous. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ did not find that the report ambiguous. In fact, even if the ALJ had incorporated Dr. Rohen's limitations, the ALJ noted that the limitations conceded Plaintiff could perform simple work. Furthermore, Dr. Rohen's opinion expressly noted which parts of her opinion were based on Plaintiff's subjective complaints and which were based on objective observation. These objective observations supported the ALJ's conclusion Plaintiff's mental impairments were not as limiting as she asserted. The objective evidence indicated Plaintiff took care of herself, was pleasant, and her thoughts and memory were adequate. (AR 887.) Moreover, Dr. Rohen's objective evidence was not the only premise for which the ALJ depended when determining the weight. Dr. Rohen's opinion was contradicted by two other physicians, Jaine Foster-Valdez, Ph.D. and Raymond Novac, PhD., each of whom found that Plaintiff did not suffer any more than mild, nonsevere mental limitations. (AR 24.) Also, as explained earlier, her activities belied her claims that she was incapable of working. In combination, the ALJ provided substantial, legitimate reasons to reject Dr. Rohen's opinion.

In conclusion, Plaintiff has failed to demonstrate the ALJ committed legal error, or that her decision was not substantially supported by the record.

Accordingly, **IT IS ORDERED**:

1. The Commissioner's decision denying benefits is **AFFIRMED**.
2. The Clerk of Court is directed to enter judgment accordingly.

Dated this 11th day of February, 2019.

_____
Bernardo P. Velasco
United States Magistrate Judge

- 15 -